**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210286-U

Order filed May 3, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| JOE S. BIRKY, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Petitioner-Appellant, | ) | Tazewell County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| BILL D. BIRKY, as Successor Trustee of the | ) | |
| Earl L. Urish Revocable Living Trust; BILL D. | ) | |
| BIRKY, individually and as a beneficiary of the | ) | |
| Earl L. Urish Revocable Living Trust; | ) | |
| G. CHRISTINE MCGANN, individually and as | ) | |
| a beneficiary of the Earl L. Urish Revocable | ) | |
| Living Trust; TERRY G. LITWILLER, | ) | |
| individually and as a beneficiary of the Earl L. | ) | |
| Urish Revocable Living Trust; HEATHER M. | ) | Appeal No. 3-21-0286 |
| SCHERTZ, individually and as a beneficiary of | ) | Circuit No. 21-MR-16 |
| the Earl L. Urish Revocable Living Trust; | ) | |
| MELISSA A. BLANCHETT, individually and | ) | |
| as a beneficiary of the Earl L. Urish Revocable | ) | |
| Living Trust; APOSTOLIC CHRISTIAN | ) | |
| LIFEPOINTS, INC., an Illinois not-for-profit | ) | |
| corporation a/k/a Apostolic Christian Home for | ) | |
| the Handicapped, Morton, Illinois, an Illinois | ) | |
| not-for-profit corporation, as a beneficiary of | ) | |
| the Earl L. Urish Revocable Living Trust, | ) | The Honorable |
| | ) | Bruce Phillip Fehrenbacher, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice O'Brien and Justice Lytton concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    In an action for declaratory relief, where the terms of a trust were unambiguous
                  and there was no genuine issues of material fact, the trial court did not err in
                  denying a remainder beneficiary's motion for summary judgment, in which he
                  argued proceeds from the sale of certain farmland should have been distributed to
                  the remainder beneficiaries as part of the residual trust estate. The trial court also
                  did not err in granting a motion for summary judgment filed by a not-for-profit
                  corporation where the corporation was the intended beneficiary of the farmland
                  and, thus, the intended beneficiary of the proceeds from the sale of the farmland.

¶ 2    This appeal arises out of an action for declaratory relief regarding the distribution of

funds held by a trust, with the parties disputing the effect of certain trust language. The trial court

denied the motion for summary judgment of petitioner, Joe S. Birky, in which he argued the

proceeds from the sale of farmland held in the trust should be distributed to the remainder

beneficiaries. The trial court also granted the motion for summary judgment of respondent,

Apostolic Christian Lifepoints, Inc. (Corporation), who argued the settlor intended to gift the

farmland at issue to it, either by way of the farmland itself or by way of the proceeds from the

sale of the farmland at issue. Petitioner appealed, arguing the trial court erred by denying his

motion for summary judgment and by granting respondent's motion for summary judgment. We

affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On June 18, 2019, the settlor, Earl L. Urish (Earl), executed an "Amended and Restated

Declaration of Trust," which amended the original Earl L. Urish Revocable Living Trust of

January 26, 1998. The Amended and Restated Declaration of Trust was to be known as "the Earl

L. Urish Revocable Living Trust" (hereinafter the "Trust"). The language of the Trust indicated

that Earl had previously transferred farm real estate and other assets into the Trust. The language

2

of the trust also indicated, "[t]he property, and all investments and reinvestments thereof, and all additions thereto" are collectively referred to as the "Trust Estate" and "shall be held and administered as hereinafter provided."

¶ 5 Section four, entitled "distributions," indicated that the initial purpose of the trust was "to hold the property placed in the trust for the use and benefit of the Settlor; and, upon, the death of the Settlor, to make distribution thereof according to the terms as hereinafter provided."

¶ 6 Section five provided as follows:

"5. FINAL DISTRIBUTION AND TERMINATION: In the event the Trust has not been terminated at the death of Settlor, then the Trustee is directed to make the following distributions:

"A. The farm real estate and all improvements located thereon consisting of 67 acres, more or less, legally described as follows:

[legal description]

Tax ID No. ***

to my stepson, Bill D. Birky. In the event he is not then living, the real estate shall be distributed to his descendants, per stirpes;

B. The residential real estate located at 2070 Veterans Road, Morton, Illinois, and legally described as follows:

[legal description]

Tax ID No. ***

to the Apostolic Christian Home for the Handicapped, Morton, Illinois, an Illinois Not-For-Profit corporation.

3

C.	The farm real estate and all improvements located thereon consisting of 79 acres, more or less, legally described as follows:

[legal description]

Tax ID No. *** (Partial)

to the Apostolic Christian Home for the Handicapped, Morton, Illinois, an Illinois not-for-profit corporation. Disposition of said farm real estate to the Corporation is subject to a grant of an option to purchase to my stepson, Bill D. Birky. I direct the Trustees of my Trust to cause said real estate to be appraised to determine its fair market value as of my date of death and the appraised value discounted by 7% to determine the option price. The Trustees are directed to give written notice of the option price to Bill D. Birky within 3 months after my date of death and the option may be exercised by him by giving written notice thereof to the Trustees within 30 days thereafter being provided the option price. My Trustees shall be directed to pay the customary sales expenses ***. In the event the option to purchase is not exercised by him, disposition of the real estate shall be made in kind to the Corporation as hereinabove provided. ***

D.	The farm real estate and all improvements located thereon consisting of 145 acres, more or less, legally described as follows:

[legal description]

Tax ID No. *** (Partial)

to my stepson, Bill D. Birky. In the event he is not then living, the real estate shall be distributed to his descendants, per stirpes; and,

4

E.      All remaining trust assets shall be distributed to the following

beneficiaries:

[1/3 to stepson, Joe S. Birky; 1/3 to stepdaughter, G. Christine McGann;

1/9 to Melissa A. Blanchett, 1/9 to Terry G. Litwiller; and 1/9 to Heather

M. Schertz].

In the event any of the above-named beneficiaries do not survive me, such share

they would have taken shall go to such deceased beneficiary's descendants, per stirpes."

¶ 7        On June 19, 2020, Earl died. On September 16, 2020, Bill D. Birky (Bill), individually, executed his option to purchase the farm real estate per section 5(C) of the Trust for $846,300. The sale proceeds—$838,232.13—were received by Bill, as the successor trustee of the Trust.[1] On December 24, 2020, Bill, as successor trustee, notified the remainder beneficiaries of his intent to distribute those sale proceeds to the Corporation. On January 27, 2021, a remainder beneficiary, Joe S. Birky (petitioner), filed a petition for declaratory and injunctive relief, in which he objected to the distribution of funds to the Corporation. All parties were served with notice. Bill and the Corporation entered their appearances, while the other parties did not appear or respond to the pleadings in the trial court.

¶ 8        On April 30, 2021, Joe filed a motion for summary judgment, arguing that the plain language of the Trust indicated the gift to the Corporation was conditioned on the option not being exercised. Joe argued there was no reason to present extrinsic evidence because there was no ambiguity in the language of the Trust. The trustee (Bill) took no position regarding the

---

[1] The Trust language specifically indicated that in the event that Bill was serving as a trustee of the Trust, the settlor specifically authorized Bill to ascertain the fair market value of the property (by way of a qualified appraiser) and to exercise the option, with Bill having specific authority to convey the property to himself even though he may be serving as trustee of the Trust.

5

interpretation of the Trust language but objected to petitioner's request for attorney fees and costs to be allocated from the Trust. The Corporation argued the plain language of the Trust required the sale proceeds resulting from Bill exercising his option to purchase the farmland to be distributed to it. Alternatively, the Corporation argued that summary judgment was not appropriate because there had been no extrinsic evidence regarding Earl's intent presented to the trial court.

¶ 9        On June 9, 2021, after a hearing, the trial court found that the language of section 5(C) of the Trust was not ambiguous and that Earl had intended for the sale proceeds to go to the Corporation. The trial court found that Earl had made an outright gift to the Corporation and the language referencing the option in section 5(C) did not affect that gift. The trial court denied petitioner's motion for summary judgment. *Instanter*, the Corporation made an oral motion for summary judgment in its favor and for the trial court to direct the trustee to distribute the sale proceeds to it, which the trial court granted. The trial court denied petitioner's request for attorney fees and costs. Joe appealed.

¶ 10                                II. ANALYSIS

¶ 11        On appeal, petitioner, Joe, argues the trial court erred in determining the settlor's intent was for the sale proceeds of the farmland to go the Corporation where the clear language of section 5(C) of the Trust indicates the gift to the Corporation was conditioned upon Bill declining to exercise the purchase option. Joe contends that since the necessary condition for the gift to the Corporation did not take place (the condition of Bill declining to exercise the option to purchase the farmland), the sale proceeds were part of the Trust's residual estate. For those reasons, Joe requests that this court reverse the trial court's order and direct the trial court to enter an order requiring the distribution of the sale proceeds to be made to the remainder

6

beneficiaries. Respondent, Corporation, argues the trial court did not err in denying petitioner's motion for summary judgment and granting its motion summary for summary judgment because the language of the Trust shows that Earl intended to gift the farmland to the Corporation, with the gift subject to his stepson, Bill, having the option to purchase the land from the Corporation.

¶ 12 The granting of summary judgment is reviewed *de novo*. *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 573 (2009). Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, indicate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; 735 ILCS 5/2-1005(c) (West 2020).

¶ 13 In interpreting trusts, which are construed in accordance with the same principles as wills, the intention of the settlor must be ascertained and given effect, so long as it is not contrary to law or public policy. *Citizens National Bank of Paris*, 235 Ill. 2d at 574. In so determining the intent of the settlor, courts consider the plain and ordinary meaning of the words used, taking into consideration the entire document. *Id.* The best proof of the settlor's intent is the language of the will. *In re Estate of Siedler*, 2019 IL App (5th) 180574, ¶ 23. If the language is clear and unambiguous, extrinsic evidence will not be admitted, but extrinsic evidence will be considered where latent ambiguities exist in the will. *Id.* ¶ 24.

¶ 14 Here, the language of the Trust is clear that upon Earl's death, the farm real estate referenced in section 5(C) of the Trust was to be distributed "to the Apostolic Christian Home for the Handicapped." That sentence makes clear that Earl intended to gift the farmland to the Corporation. The disposition of that farmland, however, was "subject to a grant of an option to purchase" to Bill for the purchase of the farmland at a discounted rate. Notably, the farmland that was subject to Bill's option to purchase in section 5(C) was adjacent to the land that Bill was

gifted in section 5(D), with the properties sharing the same tax identification number. The language of the Trust indicates that Earl intended to gift the land to the Corporation subject to the option granted to Bill and, if Bill did not exercise the option, the "disposition of the real estate shall be made in kind to the Corporation as hereinabove provided," indicating the land, rather than the sale proceeds, would be distributed to the Corporation if Bill did not exercise the option to purchase the farm land at issue. However, Bill did, in fact, exercise the option and, thus, the sale proceeds, rather than the farmland in kind, was to be distributed to the Corporation. There is no indication in the language of the Trust that Earl intended the sale proceeds to be distributed to the remainder beneficiaries. Rather, the language is clear that the trustee was to distribute the farmland to the Corporation. The fact that Bill exercised the option to purchase the farmland does not alter the settlor's intent and instruction for the farmland.

¶ 15        Consequently, the trial court properly denied petitioner's motion for summary judgment, properly granted respondent's motion for summary judgment, and properly ordered that the sale proceeds be distributed to the Corporation. We, therefore, affirm.

¶ 16                                III. CONCLUSION

¶ 17        The judgment of the circuit court of Tazewell County is affirmed.

¶ 18        Affirmed.

8